## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**IRISH HORTON,**

     Plaintiff,

v.                               Case No. 8:25-cv-01259-WFJ-CPT

**BEACON WOODS EAST
MASTER ASSOCIATION, INC.,
RONNIE ARMSTRONG**, and
**CHRISTOPHER SKENE**,

     Defendants.

_____/

## ORDER

Before the Court are Defendants Christoper Skene, Beacon Woods East Master Association, Inc. ("Beacon Woods"), and Ronnie Armstrong's Motions to Dismiss the Amended Complaint. Dkts. 27, 28, 32. Plaintiff Irish Horton has responded in opposition. Dkts. 39, 40, 45. After careful consideration, the Court grants Defendants' motions to dismiss.

## BACKGROUND

This dispute arises out of Plaintiff Horton's expulsion from a residential clubhouse in his subdivision when attempting to attend a resident association meeting on May 20, 2023.[1] Horton is an "extremely dark-skinned, Black/African-

---

[1] The Court recites the facts based on the allegations within the Amended Complaint (Dkt. 17), which it must accept as true in ruling on a motion to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

American male," who is physically disabled. Dkt. 21 ¶¶ 10, 12. Horton's physical disability requires "continued medical treatment related to his back, shoulder, and limbs," along with the use of a service dog. *Id.* ¶ 10. Horton's wife is also "Black/African American." *Id.* ¶ 12.

Horton and his spouse are residents of Barrington Woods, a residential subdivision located in New Port Richey, Florida. *Id.* ¶ 13. Defendant Beacon Woods is a master association overseeing multiple residential subdivisions, including the Barrington Woods residential subdivision. *Id.* ¶¶ 4, 14. As part of Defendant Beacon Woods' master association, Barrington Wood and all its residents, including Horton, are bound to the homeowners association covenants. *Id.*; *see* Dkt. 21-1 (showing the "Beacon Woods East Recreation Associate Rules and Regulations"). Defendant Beacon Woods provides a clubhouse for Barrington Woods residents, and Horton claims he submitted registration papers for his service dog to the clubhouse manager in 2020. Dkt. 21 ¶ 16.

On May 20, 2023, Horton, along with his wife and service dog, went to the clubhouse to attend an association meeting for Barrington Woods residents. *Id.* ¶ 17. Defendant Armstrong, who served as Beacon Woods' homeowners association ("HOA") president, and Defendant Skene, who was the Barrington Woods HOA vice president, were in attendance. *Id.* ¶ 18. Defendants Armstrong and Skene are both "White/Caucasian." *Id.*

Plaintiff alleges that Defendants Armstrong and Skene, "[a]cting under the authority of their official roles, . . . collaborated to deny Horton access to the Clubhouse, and its bathroom facilities because of Horton's race and . . . disability." *Id.* ¶ 19. Specifically, when Horton arrived at the clubhouse, Defendant "Armstrong invaded Horton's privacy" by following Plaintiff "into the men's restroom and forcibly opened the bathroom stall where Horton was defecating." *Id.* ¶ 22. While Plaintiff was in the bathroom, Defendant Armstrong "repeatedly harassed and threatened Horton to leave the premises," telling Plaintiff that clubhouse policy did not allow pets in the facility, despite official signage posted a week before the incident allowing service animals in the clubhouse. *Id.* ¶¶ 20, 23. During these interactions, Plaintiff informed Defendant "Armstrong that his dog was a certified service animal to no avail." *Id.* ¶ 25.

After leaving the restroom, Plaintiff attempted to attend the scheduled association meeting and implored Defendants Skene and Armstrong to cease the abuse and harassment. *Id.* ¶ 26. Defendant Armstrong, however, continued to tell Plaintiff to leave, loudly stating, "Sir, you can't have that dog in the building." *Id.* ¶ 27. During this time, Plaintiff claims that Defendant Skene was aware of the dog's designation as a service animal, but "acquiesced in the discrimination and harassment . . . by further denying access to the Clubhouse facilities . . . and also demanded that Horton leave the premises." *Id.* ¶ 28. At some point, Defendants

Armstrong and Skene "chased Horton out of the Clubhouse, and continued to berate Horton in the presence of other community residents by loudly exclaiming, 'Prove it!'" *Id.* ¶ 29. Plaintiff further alleges that shortly after the incident, Horton approached Defendant Armstrong to discuss his disability, but "Armstrong remained unapologetic and maintained that Horton was 'fit,' 'anyone could buy the [service] vest [for a dog],' and 'that didn't prove anything.'" *Id.* ¶ 33.

On or about May 27, 2023, Plaintiff informed Maureen Gontarek, a Master Beacon Woods HOA board member, of the alleged discrimination and harassment on May 20, 2023. *Id.* ¶ 34. Plaintiff also complained to Timothy Littlefield, a Beacon Woods official, about the alleged discrimination. *Id.* ¶ 35. When Defendant Beacon Woods remained indifferent and unresponsive to Plaintiff's complaints, Plaintiff wrote a letter dated June 15, 2023, to Barrington Woods HOA President David Hale. *Id.* ¶ 36.

On August 6, 2023, at another Barrington Woods HOA meeting, Defendant Skene characterized the incident as a "misunderstanding," and a corresponding note was published in the October 2023 newsletter for residents. *Id.* ¶ 37. Additionally, on November 15, 2023, a Beacon Woods meeting was held to address discrimination and harassment against Plaintiff, but no admonishment or disciplinary action was taken against Defendants Armstrong and Skene. *Id.* ¶¶ 38–39.

On May 16, 2025, Plaintiff filed his initial complaint against Defendants. Dkt. 1. On July 17, 2025, Plaintiff filed an Amended Complaint, alleging sixteen counts against Defendants under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604 and 3617; 42 U.S.C. §§ 1981 and 1982; and common law Intentional Infliction of Emotional Distress ("IIED"). *See* Dkt. 21. In response, each Defendant filed a motion to dismiss the various counts against them. *See* Dkts. 27, 28, 32. Specifically, Defendant Beacon Woods seeks a partial dismissal of Counts III–VII (Dkt. 28), Defendant Armstrong seeks dismissal of Counts VIII–X[2] (Dkt. 32), and Defendant Skene seeks dismissal of Counts XI–XVI (Dkt. 27). The Court will discuss each motion in turn.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief to give the defendant fair notice of the claims and grounds. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). In considering a Rule 12(b)(6) motion to dismiss, the court must construe the facts in the light most favorable to the plaintiff. *Wiersum v.*

---

[2] Defendant Armstrong's motion mistakenly seeks dismissal of "claims XII through X." Dkt. 32 at 1. However, a review of the motion to dismiss clearly shows that Defendant Armstrong seeks dismissal of Counts VIII–X in the Amended Complaint. *See generally id.*

*U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citation modified). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted).

## DISCUSSION

### I.    Defendant Beacon Woods' Motion to Dismiss Counts III–VII

#### a.    Count III—Unlawful Race Discrimination under the FHA, 42 U.S.C. § 3604(b)

Pursuant to 42 U.S.C. § 3604(b) of the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, . . . or national origin." 42 U.S.C. § 3604(b). The Eleventh Circuit has explained that "the language of the FHA is broad and inclusive, prohibits a wide range of conduct, has a broad remedial purpose, and is written in decidedly far-reaching terms." *Watts v. Joggers Run Prop. Owners Ass'n, Inc.*, 133 F.4th 1032, 1039 (11th Cir. 2025) (citation modified). As such, "[s]ection 3604(b) prohibits race-based discrimination related to the sale or rental of a home, including its attendant facilities and services." *Id.*; *see* 24 C.F.R. § 100.65(b)(4) (clarifying that unlawful

post-acquisition conduct includes limitations on a homeowner's access to privileges, services, or facilities associated with their home).

"A plaintiff can establish a violation under the FHA by proving intentional discrimination (disparate treatment), discriminatory impact (disparate impact), or a refusal to make a reasonable accommodation." *Price v. Howard*, No. 1:22-CV-02056-SDG, 2023 WL 2767770, at *2 (N.D. Ga. Mar. 31, 2023) (citing *Bonasera v. City of Norcross*, 342 F. App'x 581, 583 (11th Cir. 2009)).[3] In this case, the allegations in the Amended Complaint seem to suggest that Plaintiff is bringing a disparate treatment claim. *See* Dkt. 21 ¶ 55.

A claim for disparate treatment "requires a plaintiff to show that he has actually been treated differently than similarly situated" individuals outside of his protected class. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1216 (11th Cir. 2008); *see also Bonasera*, 342 F. App'x at 584. "To establish a *prima facie* case of disparate treatment under the FHA, the plaintiff must demonstrate that (1) her rights are protected under the FHA, and (2) as a result of the defendant's discriminatory conduct, she has suffered a distinct and palpable injury." *Price v. Howard*, 2023 WL 2767770, at *3 (citing *Raymond v. State Farm Fire & Cas. Co.*, 2022 WL 2826454,

---

[3] The Court does not rely on unpublished Eleventh Circuit opinions as binding precedent; however, they may be cited when the Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022).

at *13 (N.D. Ga. July 1, 2022), *appeal dismissed*, 2022 WL 10704871 (11th Cir. Sept. 2, 2022)).

Here, the Court finds that Horton has not sufficiently pleaded a *prima facie* case of disparate treatment under the FHA. Taking the factual allegations in the complaint as true, the HOA recreation rules (Dkt. 21-1) govern the usage of certain facilities in the Barrington Woods subdivision and establish additional rights and obligations that Plaintiff accepted when moving into Barrington Woods. Dkt. 21 ¶¶ 4, 14. These additional rights included access to "club facilities." Dkt. 21-1 at 1. As such, "[t]hese rights fall squarely within the common usage definitions of 'privileges, services, and facilities associated with a dwelling.'" *Watts*, 133 F.4th at 1042. Plaintiff has also satisfactorily alleged that he is a "Black/African-American male," and therefore a member of a protected class under the FHA. Dkt. 21 ¶ 12.

However, Plaintiff has also not sufficiently pled facts suggesting that Horton's treatment by Defendants Armstrong and Skene, when expelling and barring him from entering the clubhouse, stemmed from racial discriminatory animus. *See id.* ¶¶ 12–32. While a plaintiff who has his "use of privileges, services or facilities associated with a dwelling" limited because of his race may have a claim for disparate treatment under the FHA, 24 C.F.R. § 100.65(b)(4), Hortin has not alleged facts showing that he was actually treated any differently than non-black residents who were allowed into the clubhouse to without being accosted. Instead, all of

Plaintiff's allegations suggest a discriminatory animus stemming from his *disability* and that he was treated differently from non-disabled residents.

For example, when Defendant Armstrong accosted Plaintiff in the restroom, "Armstrong repeatedly harassed and threatened Horton to leave the premises, . . . asserting that Horton's [service] dog was prohibited at the Clubhouse." Dkt. 21 ¶ 23. Furthermore, the alleged verbal statements made by Defendant Armstrong all refer to Plaintiff's disability, not his race: "Sir, you can't have that dog in the building," saying Plaintiff needed to "prove" he has a disability, telling Plaintiff that he does not have a disability because he is "fit," claiming "anyone could buy the [service] vest [for a dog]," and "that [having a service vest on a dog] didn't prove anything." *Id.* ¶¶ 27, 29, 33. During the incident, Plaintiff repeatedly informed Defendant "Armstrong that his dog was a certified service animal to no avail." *Id.* ¶ 25. As to Defendant Skene, Plaintiff plainly alleges that "being aware of the dog's designation as a service animal, Skene acquiesced in the discrimination and harassment of Horton by further denying access to the Clubhouse facilities to Horton and also demanded that Horton leave the premises." *Id.* ¶ 28. Put simply, Plaintiff has not established that "race played some role" in Defendants Armstrong and Skene's actions. *Sofarelli v. Pinellas County*, 931 F.2d 718, 722 (11th Cir. 1991). Because none of the factual allegations in the Amended Complaint can support a claim for

unlawful race discrimination under 42 U.S.C. § 3604(b), the Court dismisses Count III for stating an insufficient claim.

  b. *Count IV—Unlawful Race-Based Interference under the FHA, 42 U.S.C. § 3617*

The FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by Section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. However, "[t]he Eleventh Circuit has recognized that § 3617 does not require proof of an independent violation of §§ 3603–3606 to create liability." *Petricca v. Saxony Condo. Ass'n, Inc.*, No. 23-CV-81581, 2024 WL 5683535, at *3 (S.D. Fla. Sept. 25, 2024) (citing *Sofarelli*, 931 F.2d at 722). As such, to state a § 3617 interference claim, a plaintiff must allege "(1) that the plaintiff exercised or enjoyed 'any right granted or protected by' Sections 3603–3606; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct." *Moore v. Camden Prop. Tr.*, 816 F. App'x 324, 335 (11th Cir. 2020) (quoting 42 U.S.C. § 3617).

Here, as discussed above, the Court has already found that there is no underlying § 3604(b) violation for racial discrimination. While Plaintiff likely alleged a claim for unlawful *disability-based* interference under 42 U.S.C. § 3617 in Count II, *see* Dkt. 21 ¶¶ 47–52 (showing "Count II UNLAWFUL DISABILITY INTERFERENCE"), Plaintiff has not alleged facts showing that any interference by

10

Defendants was connected to Plaintiff's *race*. Again, Plaintiff's allegations about being expelled and barred from the clubhouse all relate to Plaintiff's disability and his use of a service animal, not his status as an African American. *Id.* ¶¶ 23–33. As for the few instances where the Amended Complaint mentions "race" and "racial animus," they are all conclusory statements devoid of any factual support. *Id.* ¶¶ 19, 20, 60. Nor is Plaintiff's unsupported allegation that Defendants Armstrong and Skene were "patronizing" to Horton and considered him to be a "Black, disabled simpleton" enough to survive dismissal. *Id.* ¶ 32; *see Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal.").

As another district court has noted, "[i]nterference is more than a quarrel among neighbors or an isolated act of discrimination, but rather is a pattern of harassment, invidiously motivated." *LaGrasso v. Seven Bridges Homeowners Ass'n, Inc.*, No. 20-81163-CV, 2021 WL 3417809, at *9 (S.D. Fla. May 14, 2021) (quoting *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009)). The Amended Complaint is devoid of any allegations showing an invidious pattern of harassment as it relates to Plaintiff's race. Plaintiff cannot pigeonhole a one-time incident concerning the use of a service animal in the clubhouse into a race-based interference claim. As such,

because none of the factual allegations can support a claim for unlawful race-based interference under 42 U.S.C. § 3617, the Court dismisses Count IV.

c. *Count V—Unlawful Race Discrimination under 42 U.S.C. § 1981*

Next, 42 U.S.C. § 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts." 42 U.S.C. § 1981(a). The statute defines the right to "make and enforce contracts" as "includ[ing] the making, performance, modification, and termination of contracts[] and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). "Unlike the FHA, Section 1981 applies to the creation and enforceability of all contracts." *Watts*, 133 F.4th at 1044. "To state a claim of race discrimination under § 1981, plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson*, 372 F.3d at 1270.

Here, Horton—as an African American—is a member of a racial minority, and the Amended Complaint alleges discrimination concerning an enumerated activity: the right to enjoy the benefits and privileges (i.e., the clubhouse) of the contractual relationship. Dkt. 21 ¶¶ 4, 12, 14. Thus, the central issue of Plaintiff's Section 1981 claim is whether Horton has alleged facts sufficient to support the second element—that Defendants engaged in intentional racial discrimination and

that it caused construal injury. *See Jackson*, 372 F.3d at 1270; *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391 (1982) (holding that "§ 1981, like the Equal Protection Clause, can only be violated by purposeful discrimination").

As to element two, "a plaintiff may establish racial discrimination directly or circumstantially." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021) (citing *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008)). "To state a claim for direct racial discrimination, a plaintiff must allege the overt invocation of race by the alleged discriminator—for instance, the use of a racial slur or racially charged language." *Id.*; *see Kinnon v. Arcoub, Gopman & Assocs.*, Inc., 490 F.3d 886, 891 (11th Cir. 2007) (finding intentional discrimination established directly where defendant's employee used a racial slur).

Here, Horton's has not adequately alleged direct discrimination. The Amended Complaint contains no allegations that Defendants ever disparaged his race, used racially charged language, or otherwise said anything about race to anyone. To be sure, Plaintiff alleges plenty of disparaging comments made by Defendant Armstrong regarding his disability and use of a service animal, but nothing suggests these comments stemmed from Horton's race as an African American. "Because not all discrimination based on appearance is based on race,"

Horton has not alleged facts that would establish direct discrimination. *Ziyadat*, 3 F.4th at 1296.

The Court also concludes that Plaintiff failed to allege a plausible circumstantial case of racial discrimination. A Section 1981 plaintiff seeking to prove racial discrimination by circumstantial evidence may proceed under the *McDonnell Douglas* burden-shifting framework, originally developed for Title VII claims. *See Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220 n.5 (11th Cir. 2019) (en banc). "To make out a prima facie case, the plaintiff must point to comparators of a different race who were 'similarly situated in all material respects' and were not subject to the same mistreatment." *Ziyadat*, 3 F.4th at 1296 (citing *Lewis*, 918 F.3d at 1229). "[T]his typically means that the comparators must have engaged in the same basic conduct or misconduct, been subject to the same policy, worked under the same supervisor, and had similar work experience and disciplinary history." *Id.* (citing *Lewis*, 918 F.3d at 1227–28).

However, the Eleventh Circuit has clarified that the *McDonnell Douglas* framework is "an evidentiary rather than a pleading standard" and "pleading a *McDonnell Douglas prima facie* case was not necessary to survive a motion to dismiss." *Jackson*, 372 F.3d at 1270–71. Nevertheless, a plaintiff's complaint must still comply with Rule 8(a), as "unsupported conclusions of law or of mixed law and fact are not sufficient to withstand a dismissal under Rule 12(b)(6)." *Id.* at 1271

(citation omitted). Put simply, "[t]he liberal standard of notice pleading still requires a plaintiff to provide the defendant with fair notice of the factual grounds on which the complaint rests." *Id.*

Here, even under the liberal notice pleading standard, Plaintiff has failed to adequately allege that he was treated differently from comparators who were similarly situated to him in all material respects. Horton argues that the allegations in the Amended Complaint are sufficient, Dkt. 40 at 7, yet the only allegation to support comparators reads: "Located in Pasco County, Florida, the Beacon Woods communities, including subdivision Barrington Woods, are comprised of '99%' White/Caucasian residents where the disturbing conduct towards Horton mirrors the historical segregation of American Black citizens." Dkt. 21 at ¶ 15. Even if the Court considered the other residents present at the clubhouse on May 20, 2023, to be comparators, Horton does not allege how he and the proffered comparators were similarly situated. Instead, Plaintiff only vaguely states that the incident happened in the "presence of other residents." *Id.* ¶¶ 24, 27, 29. Thus, Plaintiff has not plausibly alleged that any similarly situated residents were treated differently.

While Plaintiff is correct that a substantive assessment of comparators is generally left to later stages of a case (i.e., summary judgment), *see e.g.*, *Lewis*, 918 F.3d at 1218, Plaintiff must still comply with Rule 8(a) and plead a facially plausible claim of race and national origin discrimination. *See Jackson*, 372 F.3d at 1270–71.

And courts often dismiss complaints for failing to allege sufficient factual support for the comparators. *See Jackson*, 372 F.3d at 1270–71; *see also Mallory v. Gartner, Inc.*, No. 2:21-CV-462-SPC-MRM, 2021 WL 3857652, at *3 (M.D. Fla. Aug. 30, 2021) ("[Plaintiff] has not plausibly alleged that any similarly situated employees were treated differently."); *Halstrbrison, LLC v. Se. Overtown/Park W. Cmty. Redevelopment Agency*, No. 24-21786-CIV, 2024 WL 5493421, at *3 (S.D. Fla. Dec. 18, 2024), *report and recommendation adopted*, 2025 WL 928766 (S.D. Fla. Mar. 27, 2025) ("Plaintiff has not provided sufficient comparators and thus has not alleged a predicate constitutional injury."); *Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1353 (N.D. Ga. 2017) (citation modified) ("[Plaintiff] does not identify any specific, similarly situated, non-minority individual who was treated better in a similar situation."). The same result applies here. Thus, because none of the factual allegations can support a claim for unlawful racial discrimination under 42 U.S.C. § 1981, the Court dismisses Count V.

### d. Count VI—Unlawful Race Discrimination under 42 U.S.C. § 1982

Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by [W]hite citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. "In contrast to the FHA, Section 1982 protects 'broadly defined' property rights." *Watts*, 133 F.4th at 1045 (quoting *City of Memphis v. Greene*, 451 U.S. 100,

122 (1981)). Similar to a Section 1981 claim, the first two elements of a Section 1982 claim require a plaintiff to "'adequately allege the same first two elements,' namely, (1) that the plaintiff is a member of a racial minority, and (2) that the defendant intended to subject the plaintiff to racial discrimination." *Howard v. Gucci Am., Inc.*, No. 23-CV-20886, 2023 WL 5747716, at *4 (S.D. Fla. Sept. 6, 2023) (quoting *Prestige Restaurants & Ent., Inc. v. Bayside Seafood Rest., Inc.*, No. 09-23128-CIV, 2010 WL 680905, at *7 (S.D. Fla. Feb. 23, 2010), *aff'd*, 417 F. App'x 892 (11th Cir. 2011)). "The third element requires plaintiffs to allege that defendant's discrimination amounts to 'interference with the rights or benefits connected to the ownership of property.'" *Id.* (quoting *Prestige Restaurants & Ent.*, 2010 WL 680905, at *7).

Here, only the second element is in question, whether Horton "was deprived of his property interest because of an intentional act based on racial animus." *Humphrey v. United Parcel Serv.*, 200 F. App'x 950, 952 (11th Cir. 2006) (citing *Jackson v. Okaloosa Cnty., Fla.* 21 F.3d 1531, 1543 (11th Cir. 1994)). Plaintiff's Amended Complaint, taken in the most favorable light possible, merely demonstrates that any intentional act by Defendants was based on animus stemming from Plaintiff's disability, not his race. *See* Dkt. 21 ¶¶ 23–33. Again, Plaintiff failed to state facts sufficient to show that the restrictions on entering the clubhouse were imposed on him because of his race or to compare his treatment to that of other

residents. As such, Horton's Section 1982 claim fails, and the Court dismisses Count VI.

### e. Count VII—IIED Claim

Finally, to state a valid claim for intentional infliction of emotional distress under Florida law, "a plaintiff must plausibly allege the following elements: '(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.'" *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1367–68 (11th Cir. 2024) (quoting *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015)); *see also Gallogly v. Rodriguez*, 970 So. 2d 470, 471 (Fla. 2d DCA 2007).

As to the second element, the Florida Supreme Court adopted the standard from § 46 of the Restatement (Second) of Torts, explaining "that liability for intentional infliction of emotional distress attaches 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Plowright*, 102 F.4th at 1368 (quoting *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)). To determine whether this standard is met, a court considers "whether the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead

him to exclaim, Outrageous!" *Id.* (citation modified). "Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact." *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) (citations omitted). This must be evaluated on an objective basis, and the plaintiff's subjective response to the conduct does not control. *Id.* (citation omitted).

Here, Plaintiff points to Defendant Armstrong's action, noting that Armstrong "followed Horton into the clubhouse restroom and opened the bathroom stall when Horton was defecating and demanded his removal[,] in the presence of other attendees Horton was treated like a stranger and denied entrance to the HOA meeting[,] and was further literally forced out of the building with everyone witnessing the spectacle." Dkt. 40 at 12.

While the Court agrees that verbally demanding Plaintiff leave the premises while using the restroom is demeaning, disrespectful, and unnecessary, these words and actions alone do not sufficiently establish a claim of IIED, as required by Florida law. Defendant Armstrong's conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metro. Life Ins. Co.*, 467 So. 2d at 278–79 (citation omitted). Indeed, not only are Florida courts generally "reluctant to find claims for intentional infliction of emotional distress based solely on allegations of verbal abuse," *Lopez v. Target Corp.*, 676 F.3d 1230,

1236 (11th Cir. 2012) (quoting *De La Campa v. Grifols Am., Inc.*, 819 So. 2d 940, 943–44 (Fla. 3d DCA 2002)), but "[m]ere insults, indignities, threats, or false allegations" are not enough. *Id.* (quoting *Williams v. Worldwide Flight Servs., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004)); *see also Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1344–45 (11th Cir. 2005) ("Florida case law has consistently held that mere insults and indignities do not support a claim for the tort of intentional infliction of emotional distress.").

In other words, "Florida courts have rejected IIED claims based on allegations of conduct far worse than that alleged by [Horton]." *Lopez*, 676 F.3d 1230, 1236 (11th Cir. 2012); *see Lay v. Roux Lab'ys, Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (affirming the lower court's dismissal of plaintiff's IIED claim where defendant threatened plaintiff with the loss of her job and began using "humiliating language, vicious verbal attacks, [and] racial epithets" because, while the court found the conduct to be "reprehensible," it did "not think that the alleged conduct reaches the level of outrageousness and atrociousness," required by Florida law); *Koutsouradis*, 427 F.3d at 1345 ("[O]bscene and sexually explicit comments, verbal invitations for sex, questions as to a plaintiff's sexual behavior, sexually suggestive gestures and the like do not rise to a level sufficient to support the [IIED] tort alleged here."). The verbal abuse suffered by Horton from the moment he entered the clubhouse—while being reprehensible—does not rise to the level of

"outrageousness" necessary to state an IIED claim under Florida law. *See Nims v. Harrison*, 768 So. 2d 1198, 1199 n.1 (Fla. 1st DCA 2000) (permitting an IIED claim based on profane and racially derogatory language that included threats to kill the plaintiff and to rape her and her children).

As to the allegations of being unable to enter the clubhouse and attend a meeting with his service animal, such allegations also fall well short of constituting an IIED claim. *See Gutman. v. Quest Diagnostics Clinical Labs., Inc.*, No. 09-22939-CIV, 2010 WL 11505460, at *3 (S.D. Fla. Jan. 4, 2010) (finding the plaintiff failed to sufficiently plead an IIED claim when she was "forced to wait an hour and then refused entry into a diagnostic laboratory and forced to receive blood tests in a parked car because she was dependent on a service dog"); *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 Fed. Appx. 464, 469 (11th Cir. 2009) ("Having disposed of the Fair Housing Act claims, we need not separately analyze [the plaintiff's] tort law claim for [IIED] because his argument as to this issue is wholly premised on the allegation that [the defendant] recklessly refused to allow [the plaintiff's] service animal on the premises."). Thus, the Court dismisses Plaintiff's IIED claim in Count VII.

## II.    Defendant Armstrong's Motion to Dismiss Counts VIII–X

Turning to Defendant Armstrong's motion to dismiss, Armstrong seeks to dismiss the following counts against him: the race discrimination claim under

Section 1981 (Count VIII), the race discrimination claim under Section 1982 (Count IX), and the IIED claim under Florida law (Count X). *See* Dkt. 32; Dkt. 21 ¶¶ 80–95. Specifically, Defendant Armstrong argues that all three counts must be dismissed "because Plaintiff's lawsuit is entirely premised on Mr. Armstrong's alleged discriminatory conduct towards him as it relates to Plaintiff's unidentified disability, not his race." Dkt. 32 at 1–2. Because much of the discussion on each count mirrors the Court's prior analysis in the counts against Defendant Beacon Woods, the Court will incorporate and reference that analysis when relevant.

      *a. Counts VIII and IX—Unlawful Race Discrimination under 42 U.S.C. §§ 1981, 1982*

As to Plaintiff's unlawful race discrimination claims under Sections 1981 and 1982, the Court incorporates its discussion dismissing the same claims against Defendant Beacon Woods in Counts V and VI. Again, applying the previously articulated standards for Section 1981 and Section 1982, Plaintiff fails to adequately allege that he was treated differently from comparators or deprived of any property interest because of an intentional act based on racial animus. *See Ziyadat*, 3 F.4th at 1296; *Humphrey*, 200 F. App'x at 952. None of the allegations in Counts VIII and IX provide additional facts that would alter the Court's previous finding that Plaintiff's Section 1981 and Section 1982 claims are due to be dismissed. *See* Dkt. 21 ¶¶ 80–89. Therefore, Horton's claims in Counts VIII and IX against Defendant Armstrong are also dismissed.

### b. *Count X—IIED claim*

Plaintiff's IIED claim against Defendant Armstrong does not fare any better. In Count X, Plaintiff summarily alleges the following: "Horton brings this Count X against Defendant Armstrong[;] Armstrong engaged in deliberate or reckless conduct to inflict emotional distress upon Horton[;] Armstrong's conduct was outrageous[;] Armstrong's conduct caused Horton to suffer emotional distress[;] [and] Horton's emotional distress was severe." *Id.* ¶¶ 91–95. Again, the Court will incorporate its prior discussion, as none of the allegations in Count X provide any additional facts that would alter the Court's previous finding that the Amended Complaint falls well short of constituting an IIED claim under Florida law. At most, Plaintiff's allegations for this count are a "formulaic recitation" of the IIED elements, which "will not do." *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's IIED claim against Defendant Armstrong is also dismissed.

## III.  **Defendant Skene's Motion to Dismiss Counts XI–XVI**

As to Defendant Skene's motion to dismiss, Skene seeks to dismiss the following six counts: the Section 1981 conspiracy to commit racial discrimination claim (Count XI), the aiding and abetting unlawful race discrimination claim under Section 1981 (Count XII), the Section 1982 conspiracy to commit racial discrimination (Count XIII), the aiding and abetting unlawful race discrimination claim under Section 1982 (Count XIV), the conspiracy to commit IIED under

Florida law (Count XV), and aiding and abetting IIED (Count XVI). *See* Dkt. 27; Dkt. 21 ¶¶ 96–133. Because much of the discussion on each count mirrors the Court's prior analysis in the counts against Defendants Beacon Woods and Armstrong, the Court will also incorporate and reference that analysis when relevant.

      a. *Counts XI–XIV—Conspiracy and Aiding and Abetting Claims under 42 U.S.C. §§ 1981, 1982*

As an initial matter, the Court is unsure whether Plaintiff is raising additional 42 U.S.C. §§ 1981, 1982 claims against Defendant Skene or a 42 U.S.C. § 1985(3) claim that Defendant Skene conspired to deprive Plaintiff of his federal rights or privileges. Interestingly, Plaintiff's response cites to *Arnold v. Bd. of Educ. of Escambia Cnty.* Ala., 880 F.2d 305, 317 (11th Cir. 1989), which discussed whether the plaintiffs adequately alleged a conspiracy claim under 42 U.S.C. § 1985(3). Dkt. 39 at 10. As such, the Court construes Plaintiff's conspiracy claims as one under 42 U.S.C. § 1985(3).

To state a claim under Section 1985(3), a plaintiff must allege to following: "(1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the

United States." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) (citation omitted).

As discussed above, the Court has already found that the Amended Complaint failed to allege any violation of Section 1981 or Section 1982 by Skene's co-defendants. Regardless, the Eleventh Circuit has already found that conspiracies to violate rights protected by Section 1981 are not cognizable under Section 1985(3). *See id.* ("[W]e hold conspiracies to violate rights protected under § 1981 are likewise insufficient to form the basis of a § 1985(3) claim."). As to Section 1982, the Court cannot find, nor does Plaintiff cite, any binding caselaw showing that a Section 1982 claim is cognizable under Section 1985(3).

The same conclusion applies to Plaintiff's so-called "aiding and abetting" counts. The Court cannot find a single case within the Eleventh Circuit holding that "aiding and abetting unlawful race discrimination" under Section 1981 and Section 1982 are real causes of action. Plaintiff's sole citation to *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1315 (11th Cir. 2008) is totally irrelevant, as the appeals court was determining whether a plaintiff could plead a theory of aiding and abetting liability under the Alien Tort Statute and the Torture Act, 28 U.S.C. § 1350. Dkt. 39 at 10. Even if "aiding and abetting" under Section 1981 or Section 1982 were cognizable claims, for the reason discussed above, the Court has already found that Co-Defendants Beacon Woods and Armstrong did not violate Section 1981 or

Section 1982. Thus, Plaintiff's claims in Counts XI–XIV against Defendant Skene are dismissed.

> b.  *Counts XV–XVI—IIED Claims*

Regarding the "conspiracy" and "aiding and abetting" IIED claims against Defendant Skene, the Court need not spend much time discussing these counts. Under Florida law, civil conspiracy and aiding and abetting claims both require an underlying tort. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999) (citation modified) ("Under Florida law, an actionable conspiracy requires an actionable underlying tort or wrong."); *Taubenfeld v. Lasko*, 324 So. 3d 529, 543–44 (Fla. 4th DCA 2021) ("To state a claim for aiding and abetting a tort in Florida, a plaintiff must allege . . . an underlying violation on the part of the primary wrongdoer[.]"). Here, the Court incorporates its previous analysis articulating why Plaintiff failed to sufficiently plead an IIED claim against Skene's co-defendants. Because Plaintiff has failed to state a claim for IIED under Florida law, he likewise fails to state a claim for "conspiracy" to inflict emotional distress and "aiding and abetting" IIED under Florida law. Thus, Plaintiff's claims in Counts XV–XVI against Defendant Skene are dismissed.[4]

---

[4] In Plaintiff's response, there seem to be citations to a totally different amended complaint with different parties. Dkt. 39 at 11. There is neither a defendant "Vople" nor a plaintiff "West" in this case. *Id.* Nor are there any allegations that Defendants schemed to control the "LSDS Club." *Id.* ("The [Amended Complaint] alleges sufficient facts from which a reasonable inference could be drawn that Vople participated in a conspiracy to control the LSDS Club.").

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants Skene, Beacon Woods, and Armstrong's Motions to Dismiss the Amended Complaint, Dkts. 27, 28, 32, are **GRANTED**. Counts III–XVI are **DISMISSED**. If Plaintiff seeks to amend, this is due within **SEVEN (7) days**.

2. If no amendment is forthcoming, Defendant Beacon Woods must file a responsive pleading to the remaining counts within **FOURTEEN (14) days** of the entry of this Order.

     **DONE AND ORDERED** at Tampa, Florida, on November 5, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record